244 P.2d 1095

GERLACH et al. v. SCHULTZ.

No. 7818.

Supreme Court of Idaho.

June 2, 1952.

Kibler & Beebe, Nampa, for respondents.

Meek & Miller, Caldwell, for plaintiff in intervention and respondent.

THOMAS, Justice.

Conrad Gerlach, a bachelor, died intestate on or about the 15th day of January, 1943, in Canyon County, Idaho, leaving an estate therein. He left surviving him as his sole and only heirs at law and next of kin William F. Schultz, a half brother, the appellant herein, who resided at Kuna, Ada County, Idaho, and later at Nampa, Idaho, in Canyon County; Henry Gerlach, a full brother; Louisa Schlensker, a full sister; Mary Roser, a full sister (who died September 12, 1949); Harrison W. Bicking, a half brother, all of Evansville, Indiana, and James Gerlach and Clyde Gerlach, sons of a deceased half brother, who live in Illinois. On or about the 16th day of January, 1943, Mr. Schultz sent a telegram to Louisa Schlensker, ad-

vising her that Conrad Gerlach had died. None of the heirs, except Schultz, had or possessed actual knowledge of the affairs or property of decedent at the time of his death.

On the 25th day of January, 1943, Mr. Schultz filed his verified petition in the Probate Court of Canyon County, Idaho, for appointment as administrator of the estate of the deceased, setting forth therein that so far as he knew he was the only heir. Letters of administration were issued to him on February 8, 1943, and he entered upon his duties as administrator. On February 11, 1943 an inventory and appraisement was filed in which the estate was valued at $2657.97, and on August 23, 1943, Schultz filed his final account and report and petition for distribution; in the verified petition for distribution he set forth therein that he was the sole and only heir of Conrad Gerlach, deceased; thereafter, upon hearing duly had on report and petition for distribution, a decree of distribution, distributing all the property of the estate to Schultz as sole heir of decedent, was entered on the 7th day of September, 1943, and filed of record in the County Recorder's Office of Canyon County on the same date.

There is some evidence in the record that Schultz wrote to Mrs. Schlensker, Henry Gerlach, and Mary Roser, at or near the time he filed his petition for appointment as administrator, but the exact contents of such letters are not disclosed in the record.

During the administration or shortly thereafter, the date not being exact, Schultz advised certain of the heirs that the decedent left two cabins worth about $100 each; during the summer of 1943, and prior to the closing of the estate, Schultz mailed to one of the heirs a picture of the decedent's grave with an explanation that "the few remaining dollars" were spent for a grave marker. There appears to have been no communications between Schultz and any of the heirs thereafter until he visited in Indiana in 1948.

In 1948 Schultz visited all of the heirs in the State of Indiana but did not discuss with any of them anything definite concerning the estate of Conrad Gerlach, deceased; he did, however, leave the impression that decedent, had he lived a few more years, would have died a pauper; he did not advise them that any estate had been left or that he had been the administrator thereof, or that such estate was distributed to him as sole and only heir of decedent.

Mary Roser died on or about September 12, 1949, and on September 21, 1949 the attorneys for her estate wrote a letter of inquiry to Schultz with reference to Conrad Gerlach to ascertain what, if any, estate he had left in the State of Idaho. Up to this time all that any of the heirs knew with reference to Conrad Gerlach was that he had died in 1943 and had left two small cabins worth about $200 and that with the remaining few dollars he had left, a grave marker had been purchased. On Septem-

ber 27, 1949, Schultz made reply to this letter of inquiry, stating that Conrad Gerlach "left no will or estate". Soon thereafter it was learned through inquiry directed to the Probate Judge of Canyon County that decedent left an estate and that it had been probated and the entire estate distributed to Schultz. On January 28, 1950, Henry Gerlach, and Louisa Schlensker, individually and as administratrix of the estate of Mary Roser, deceased, filed a complaint against William Schultz in the District Court of the Seventh Judicial District of the State of Idaho in and for the County of Canyon, seeking equitable relief on the ground that Schultz practiced fraud and deceit upon the heirs and upon the court, asking that the court declare Schultz trustee for the use and benefit of plaintiffs to the extent of their respective interests, and for accounting; that a lien be imposed upon any funds or property held by Schultz to secure satisfaction of the trust and in the alternative for a money judgment; thereafter, and on March 27, 1950, Bicking filed an action in intervention, asking the same relief.

It is to be observed that this action is not an action to set aside a final decree of distribution; it is not an attack upon the decree as such, but is an action to have the appellant herein declared to be a trustee for all the heirs and to account for their respective interests and to satisfy such by money judgment in the event the property or proceeds thereof is not now in the hands of the appellant.

The principal issue to be decided here is whether the acts and conduct on the part of appellant as administrator constitute fraud sufficient to warrant a court of equity in granting appropriate relief to the respondents.

There is little conflict in the evidence adduced at the trial; there Schultz, however, testified that he told the Probate Court and his attorney, who is now deceased, about the other heirs; this testimony conflicts with his sworn statement contained in his verified petition for letters of administration as well as in his verified petition for distribution of the estate; Schultz admitted during the course of the trial that he knew that each of the plaintiffs and plaintiff in intervention were heirs of the decedent and insofar as he had any knowledge that they were all then living and entitled to share in the distribution of the estate; he further testified that it was his belief that should the other heirs fail to file any claims in the estate for two years that he would be entitled to the entire estate; when he was questioned about what he meant in his reply to the letter of inquiry from the attorney in Indiana when he said that Conrad left no will or estate, he testified that he understood the word estate to mean some place of business.

The court, sitting without a jury, made its findings of fact and conclusions of law and entered judgment in favor of the plaintiffs below, that is, all of the heirs except James Gerlach and Clyde Gerlach, who

were not parties to the action, for a one-sixth interest each in and to the net proceeds of the estate, together with interest on their respective shares. From this judgment Schultz has appealed.

The appellant has made some twenty-two assignments of error. These assignments are directed at the sufficiency of the complaint to state facts to constitute a cause of action; the sufficiency of the evidence to support findings and judgment; a challenge to the jurisdiction of the court to entertain this action, and the assertion that the action is barred under the provisions of Sec. 5–218, Idaho Code.

The complaint alleges that the appellant, as administrator, who is also an heir of the decedent, even though knowing all the names, relationship to decedent, and the whereabouts of the plaintiffs below, and of their interest in the estate of decedent, concealed from the Probate Court of Canyon County, Idaho, the existence of such heirs and their rights in the estate and did actively misrepresent to the Court that he was the sole and only heir of decedent, and that he did not, although he knew the names and whereabouts of each respondent herein, and of their interest in the estate, advise any of them that the decedent left an estate, or that he had been appointed administrator or was administering the estate, and that he did by such misrepresentations, fraud and concealment, succeed in having the entire estate distributed to him. Such allegations, if true, and for the purpose of

the demurrer are to be considered as true, allege facts which are sufficient to constitute a cause of action against appellant. Ellis v. Schwank, 37 Wash.2d 286, 223 P.2d 448; Ferguson v. Ferguson, 58 Cal.App.2d 811, 137 P.2d 735.

It is urged that the District Court has no jurisdiction of the subject matter of the action set forth in the complaint and the complaint in intervention, for the reason that exclusive original jurisdiction in matters with reference to the settlement of estates is vested in the Probate Courts and that the decree of distribution therein cannot be collaterally attacked. The respondents have sought to invoke the equity jurisdiction of the court for the purpose of impressing a trust, or, in the alternative, a money judgment, for the alleged fraudulent acts of the appellant. The action does not assail nor challenge the court in which the decree of distribution was rendered; it does not attack nor challenge the integrity of that decree nor ask relief against the law thereby established. The action treats all of the proceedings had therein as valid and only asks for relief against the consequences thereof; it seeks to adjudicate the rights of the parties inter sese in relation to the decree, and is directed to the parties only. 31 Am.Jur. Sec. 625, p. 211. Equity jurisdiction of the District Court is not confined to statutory provision for a delineation and is not subject to dimunition by legislative acts. Clemens v. Kinsley, 72 Idaho 251, 239 P.2d 266. The equity juris-

diction of this court under the circumstances of this case to enforce a claim against the representative of the estate exists as an equitable remedy for breach of trust on the part of the administrator and is not an attack, collateral or otherwise, upon the decree entered.

Here, by reason of the trust and fiduciary relationship existing between the appellant as administrator and the respondents as heirs of decedent, a positive duty rested upon appellant as administrator to fully, fairly and frankly advise the court as to all facts and all information in his possession with reference to the heirs of decedent and their whereabouts. Sec. 15–319, Idaho Code; Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765. He admits he did not do this. On the contrary, he filed a verified petition for appointment as administrator in which he set forth that so far as he knew he was the sole and only heir of decedent; later he filed a verified petition for distribution of the estate, wherein he set forth that he was the sole and only heir of decedent. He took it upon himself to determine that he was the only heir of decedent and that respondents herein were not heirs; this was clearly a matter for the Probate Court to decide. Francon v. Cox, 38 Wash.2d 530, 231 P.2d 265; it is not likely that had the court been advised as to the names and residences of the respective heirs, that a decree of distribution would have been entered without further investigation or inquiry. Hewitt v. Hewitt, 9 Cir., 17 F.2d 716. By such acts and conduct on the part of appellant he kept the heirs in ignorance of the proceedings and concealed from the court the fact that they were heirs, and thus by such course of conduct prevented an adversary trial of this issue. Donovan v. Miller, 12 Idaho 600, 88 P. 82, 9 L.R.A.,N.S., 524.

Appellant, with full knowledge of the names and whereabouts of the respondents herein, and knowing that they were heirs of the decedent, not only ignored his plain duty under his trust by concealing and withholding from the Court such information, but affirmatively charted a course of acts and conduct which caused the Court to believe that he was the sole and only heir and to accordingly enter a decree distributing the entire estate to him as such heir; his entire course of conduct was such as to cause him to have every reason to believe that such would operate to the detriment and prejudice of all other heirs and to advantage to himself. These acts clearly and unquestionably constitute extrinsic fraud upon the Court and upon the other heirs. Burns v. Skogstad, supra; Hewitt v. Hewitt, supra; Diamond v. Connolly, 9 Cir., 251 F. 234; Purinton v. Dyson, 8 Cal.2d, 322, 65 P.2d 777, 113 A.L.R. 1230; Weyant v. Utah Savings & Trust Co., 54 Utah 181, 182 P. 189, 9 A.L.R. 1119; see also further cases annotated in 113 A.L.R. 1237.

It is difficult to conceive a stronger case of fraud, misrepresentation and concealment on the part of a fiduciary, except

where such a fiduciary testifies under oath that he designedly so acted for the express purpose of acquiring the interests of the heirs for himself. Notwithstanding these facts, appellant contends that the rights of the respondents as heirs have been barred by laches and limitations; the decree of distribution was recorded on September 7, 1943, and appellant insists that recording of the decree constituted notice to these heirs to put them on inquiry and that the statute of limitations commenced to run from the date such decree was recorded, which he asserts would be the date on which the heirs are charged with discovery of the facts constituting fraud.

 The basic principle recognized in most jurisdictions as applicable to both law and equity cases is that the statute of limitations commences to run against an action for fraud only from the time the fraud is discovered or, in the exercise of reasonable diligence, would have been discovered.

There is no reason to anticipate unfaithfulness on the part of one who stands in a fiduciary relationship and when this is so the obligation to search the records is relaxed. If a party be prevented by fraud from availing himself of the benefit of the record or is led by such means to forego an investigation of the record, no one who participates in such fraud can insist that the duty to so do be enforced. Such a situation exists here. The records were not accessible to the respondents, who lived in a distant state. Schultz undertook to impart to them the very information which, if his statements were true, the records would have disclosed, that is, that there was no estate. The respondents had no reason to question his integrity and the law did not obligate them to do so. They had the right to accept his representations to them as being true and to rely upon them as faithful, frank and full disclosures of what they would have discovered by the records had they consulted them; hence the mere constructive notice which the recorded instrument imparted would not be sufficient to set in motion the statute of limitations.

Respondents all resided in the State of Indiana and the Probate proceedings were had in the State of Idaho. It is true that some of them, at least, had notice of the death of decedent, and that they were informed that he left two small cabins worth about $100 each, and that what little money remained was used to buy a grave marker. They did not know anything further with reference to what, if any, estate was left by decedent, not did they know that such was in the process of being probated or that it was probated, or that appellant had been appointed administrator thereof and the entire estate distributed to him as sole heir, until, upon inquiry directed to the Probate Court soon after September 27, 1949, subsequent to the death of Mary Roser, they were so advised. When these facts were then learned, appropriate actions were filed within a matter of a few

months. Upon these facts it is apparent that respondents were not guilty of laches and that the statute of limitations had not run. Sec. 5–218, Idaho Code; Burns v. Skogstad, supra; Bruun v. Hanson, 9 Cir., 103 F.2d 685; Hobart v. Hobart Estate Co., 12 ·Cal.2d 412, 159 P.2d 958.

Furthermore, when the relationship of trust and confidence exists, as it does here, making it the duty of the defrauder in his trust capacity to disclose the true state of facts, the defrauded party is not charged with constructive discovery of the fraud on account of the facts being made a matter of public record, and the limitation statute does not begin to run on the recording of such facts. Kauffman v. McLaughlin, 189 Okl. 194, 114 P.2d 929; Clover v. Neely, 116 Okl. 155, 243 P. 758; Schoedel v. State Bank of Newburg, 245 Wis. 74, 13 N.W.2d 534, 152 A.L.R. 459; Heap v. Heap, 258 Mich. 250, 242 N.W. 252; Vail v. Vail, 233 N.C. 109, 63 S.E.2d 202; Briece v. Bosso, Mo.App. 158 S.W.2d 463; Hutto v. Knowlton 82 Kan. 445, 108 P. 825; 54 C.J.S., Limitations of Actions, § 189(b), pages 194–195; 34 Am.Jur., Sec. 168, p. 135, also Sec. 170, p. 137, note 5; 22 L.R.A.,N.S., 215.

The facts in this case are readily distinguishable from the facts in the case of Chapin v. Stewart, 71 Idaho 306, 230 P.2d 998, cited by appellant, as in that case there was no allegation of fraud and the acquisition of the property therein was consummated after the trust and confidential relationship ceased to exist.

Finally, appellant assigns as error the insufficiency of the evidence to support the findings and judgment. The findings made by the Court, the trier of the facts, are based upon and supported by substantial and competent, although conflicting evidence, and will not be disturbed on appeal. Sec. 13–219, Idaho Code; Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446; Holland v. Beames, 71 Idaho 343, 231 P.2d 741; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347.

No reversible error being made to appear, the judgment of the trial court is affirmed.

Costs to respondents.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.